IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF C.D.K., a minor child | MEMORANDUM DECISION AND ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND DENYING RESPONDENTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| | Case No. 2:08-CV-490 TS |

This matter is before the Court on Petitioner's Motion for Summary Judgment, joined by Intervenor Cherokee Nation, on her Petition to invalidate an adoption, and on Respondents' Motion for Partial Summary Judgment. The underlying case arises out of a relinquishment hearing which occurred in November 2007 (the "Relinquishment Hearing"), at which Petitioner relinquished her parental rights to her biological child, C.D.K., in the Second Judicial District Court of Davis County.

In her Motion, Petitioner claims that, as a matter of law, C.D.K. is an Indian Child, as defined by the Indian Child Welfare Act ("ICWA")[1], and that the Relinquishment Hearing did not comply with the requirements of the ICWA. Respondents, the adoptive parents, argue in their Motion that Petitioner has failed to establish that C.D.K. is an Indian Child. Because the Court finds that Petitioner has provided sufficient evidence to establish that C.D.K. is an Indian Child pursuant to the ICWA and that the Relinquishment Hearing did not comply with the procedural requirements

---

[1] 25 U.S.C. §§ 1901-1963.

1

of the ICWA, the Court will grant Petitioner's Motion for Summary Judgment and deny Respondents' Motion for Partial Summary Judgment.

## I. STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[2] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable factfinder could return a verdict for the nonmoving party in the face of all the evidence presented.[3] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

## II. BACKGROUND

The following undisputed facts are taken from Petitioner's Petition, the affidavits of the parties, and the records of the adoption proceedings, including the transcript of the Relinquishment Hearing. In November 2007, Petitioner gave birth to C.D.K., a minor. The next day, Petitioner, accompanied by her mother (the "Grandmother"), and Respondents appeared in the Second Judicial District Court of Davis County, State of Utah. During the Relinquishment Hearing, Respondents were represented by counsel, but Petitioner was not. The transcript of the Relinquishment Hearing reveal that, after being placed under oath, Petitioner acknowledged that she understood that she had a right to counsel, but indicated that she did not wish to retain counsel. Petitioner also indicated,

---

[2] *See* Fed. R. Civ. P. 56(c).

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

among other things, that she could read, write, and understand English, that she had read the documents relinquishing parental rights to C.D.K., and that she had been presented with sufficient opportunity to have any questions answered.[5] Petitioner also affirmed that she understood that, once she signed the documents relinquishing parental rights, and the court accepted that document, that she would not be allowed to withdraw the relinquishment.[6]

During the Relinquishment Hearing, the state court judge asked the Grandmother if she was "of Indian extraction."[7] The Grandmother indicated that she was enrolled, but that she had not enrolled her children, and had planned to "look at" it in the following months.[8] The Grandmother affirmed that Petitioner was "not a member of a Native American tribe at [that] time."[9] The state court judge found that the natural mother had appeared and signed the relinquishment of her own free will and choice. The state court judge then accepted the relinquishment, reviewed the pre-

---

[5]In her Petition, Petitioner argues that she was given very little time to review the termination papers, that no one explained them to her, and that Respondents' counsel pushed on with the proceedings. Docket No. 1, ¶ 13. However, at the Relinquishment Hearing, under oath, Petitioner answered questions from both Respondents' counsel and the state court judge that she had read the documents and that she "already asked all the questions [she] had." Docket No. 12-3 at 32.

[6]In direct contrast to her statements to the contrary at the Relinquishment Hearing, Petitioner alleges in her Petition that no one inquired as to whether she understood what she was signing. Docket No. 1, ¶ 18. Petitioner also alleges that the consent form was invalid because it was not accompanied by the type of certificate required by 25 U.S.C. § 1913(a). Section 1913(a) does not specify the form the certificate must take, and the state court judge did issue oral findings of fact that included findings required by § 1913(a). Because the Court will find that the ICWA applies, and because all parties agree that the Relinquishment Hearing took place before the ten-day waiting period prescribed by § 1913(a) had ended, the Court need not reach the issue of whether the state court judge's oral findings of fact meet the requirements of § 1913(a).

[7]Docket No. 12-3 at 29.

[8]*Id.*

[9]*Id.*

3

placement adoption study, and approved temporary custody of C.D.K. with the Respondents. The adoption was finalized in May 2008.

Petitioner's grandfather (the "Great Grandfather") had been an enrolled member of the Cherokee Nation, a federally recognized Indian tribe.[10] The Grandmother became an enrolled member of the Cherokee Nation on June 4, 2008.[11] Petitioner became an enrolled member of the Cherokee Nation on August 5, 2008. Respondents are not a member of any federally recognized Indian tribe. C.D.K. is not, and has never been, an enrolled member of any federally recognized Indian tribe.

Petitioner seeks invalidation of the adoption of C.D.K. by the Respondents because the Relinquishment Hearing allegedly did not meet the procedural requirements of the ICWA. Alternatively, Petitioner argues that the adoption should be vacated, pursuant to the ICWA, because it was induced through fraud and duress. While there is some dispute regarding other procedural requirements of the ICWA, all parties agree that the Relinquishment Hearing took place within ten days of birth, which is prohibited by the ICWA, and Respondents therefore concede that the procedural requirements of the ICWA were not fully complied with. Respondents argue, however, that the ICWA is inapplicable because C.D.K. is not an Indian Child within the meaning of the ICWA.

---

[10] Petr.'s Aff., Attachment D.

[11] *Id.*, Attachment C.

III. DISCUSSION

A. DOES THE ICWA APPLY?

The ICWA establishes "minimum Federal standards for the removal of Indian children from their families."[12] In order for the ICWA to apply in the present case, the Relinquishment Hearing must have been an adoptive placement and C.D.K. must have been an Indian Child at the time of the Relinquishment Hearing. It is undisputed that the Relinquishment Hearing qualifies as an adoptive placement under the ICWA.[13] The ICWA defines an Indian Child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."[14]

Petitioner and Intervenor base their arguments solely upon the argument that C.D.K. was an actual member of the Cherokee Nation,[15] pursuant to the Cherokee Nation Membership Act, § 11A (the "Membership Act"). That Act provides for automatic admission into the Cherokee Nation of "every newborn child who is a Direct Descendant of an Original Enrollee . . . for a period of 240 days following the birth of the child."[16] Petitioner argues that C.D.K. is a direct descendant of an

---

[12] 25 U.S.C. § 1902.

[13] *Id.*, § 1903(1)(iv).

[14] *Id.*, § 1903(4).

[15] Petitioner originally argued that C.D.K. was an Indian Child because Petitioner had, subsequent to the Relinquishment Hearing, been enrolled as a member of the Cherokee Nation. Docket No. 12-2 at 7. However, Petitioner has apparently abandoned this line of argument, so the Court will deal solely with whether C.D.K. was a member of the Cherokee Nation at the time of the Relinquishment Hearing.

[16] Docket No. 32, Ex. B at 5.

Original Enrollee and was therefore an automatic member of the Cherokee Nation at the time of the Relinquishment Hearing.

Petitioner and Intervenor also argue that the Cherokee Nation determined that C.D.K. was, at the time of the Relinquishment Hearing, a member of the Cherokee Nation, pursuant to the Membership Act, and that the Cherokee Nation's determination of C.D.K.'s membership is conclusive, essentially depriving this Court of any jurisdiction over the question of whether C.D.K. is a member of the Cherokee Nation. The Court disagrees that it has no jurisdiction.

The ICWA makes clear that a petition to invalidate an adoption under the ICWA is to be made to a court of competent jurisdiction, including this Court.[17] It is therefore the responsibility of the Court, not the relevant Indian tribe, to determine whether the ICWA applies, including the determination as to whether the child is an Indian Child under the ICWA.[18] Petitioner and Intervenor make much of Supreme Court precedent that "Indian tribes retain their inherent power to determine tribal membership"[19] and Bureau of Indian Affair Guidelines that a "determination by a tribe that a child . . . is or is not eligible for membership in that tribe . . . is conclusive."[20] However, such

---

[17] 25 U.S.C. § 1914.

[18] *See In re Baby Boy Doe*, 849 P.2d 925, 930 (Idaho 1993) ("[T]he . . . court must make the necessary determinations regarding application of ICWA. This includes determining whether the child meets the definition of an Indian child contained in 25 U.S.C. § 1903(4).").

[19] *Montana v. United States*, 450 U.S. 544, 564 (1981); *See also Matter of Petition of Philip A.C.*, 149 P.3d 51, 56 (Nev. 2006) ("Whether a person is a member of a Native American Tribe for ICWA is for the tribe itself to determine.").

[20] 44 Fed. Reg. 67,584 (1979).

determinations in proceedings under the ICWA are intended "merely to aid . . . courts in deciding whether to apply ICWA."[21]

However, the Court finds that the Indian tribes' "inherent power to determine tribal membership"[22] entitles determinations of membership by Indian tribes to great deference. Respondents argue that Petitioner and the Cherokee Nation have failed to provide any evidence that C.D.K. was an Indian Child. The Court disagrees.

Petitioner has claimed that the Grandmother and Great Grandfather are original enrollees of the Cherokee Nation. It is not in dispute that both the Grandmother and Great Grandfather were enrolled members of the Cherokee Nation, but in order to be an original enrollee, as defined in the Constitution of the Cherokee Nation,[23] an individual must be listed on the Dawes Commission Rolls.[24] The Dawes Commission Rolls contain names collected by the United States government from 1898 to 1914, and neither the Grandmother nor the Great Grandfather were alive in 1914. Petitioner cannot, therefore, rely solely on the enrolled status of the Grandmother and Great Grandfather. However, Petitioner has provided genealogical evidence that indicates that her great-great grandfather, J.G., and great-great grandmother, E.G., were enrolled members of the Cherokee Nation.[25] Petitioner argues that J.G.'s and E.G.'s mothers, Petitioner's great-great-great

---

[21]*Baby Boy Doe*, 849 P.2d at 931.

[22]*Montana*, 450 U.S. at 564.

[23]*See* Docket No. 23, Appendix C.

[24]Constitution of the Cherokee Nation, Art. IV, sec. 1.

[25]Docket No. 33, Ex. E.

grandmothers, were original enrollees of the Cherokee Nation.[26] There is not clear and conclusive evidence to support these final claims, which are central to the question of whether C.D.K. was a member of the Cherokee Nation under the Membership Act.

The Court notes with some frustration that Petitioner or Intervenor could have greatly simplified the present inquiry by providing, at any point, documentary evidence that J.G.'s and E.G.'s mothers were original enrollees, listed as members of the Cherokee Nation on the Dawes Rolls. However, there is indirect evidence that J.G. and E.G. were both full-blooded Cherokee,[27] indicating that their mothers would have been eligible for enrollment at the time that the Dawes Rolls were being compiled. The Court, therefore, finds that no reasonable factfinder could conclude that C.D.K. is anything other than a direct descendant of an original enrollee of the Cherokee Nation and that C.D.K. was a member of the Cherokee Nation, pursuant to the Membership Act, at the time of the Relinquishment Hearing. Therefore, C.D.K. was an Indian Child and the procedural requirements of the ICWA are applicable to the Relinquishment Hearing. Because the parties agree that the procedural requirements of the ICWA were not fully complied with, the adoption of C.D.K. by Respondents must be invalidated, pursuant to 25 U.S.C. § 1914.

B.   RESPONDENTS' OTHER ICWA ARGUMENTS

Respondents make other arguments related to the ICWA and the Membership Act. Specifically, Respondents argue that the Membership Act is in violation of the Constitution of the Cherokee Nation by providing for other avenues for membership other than those expressly listed

---

[26]Docket No. 33 at 5.

[27]*Id.*, Ex. E.

in the Constitution of the Cherokee Nation.[28] Petitioner responds that this Court is "not the proper forum for determining a political decision by the Tribe."[29] Petitioner argues that Respondents are attempting to use the Court to mandate how the Cherokee Nation must enroll members. This is overstating their case, because Respondents' argument, on its face, is merely an attempt to require the Nation to abide by its own Constitution. However, because the Constitution of the Cherokee Nation does not explicitly prohibit the Membership Act, this Court is an improper forum for determining whether the Membership Act violates the Constitution.

Respondents also argue that the Membership Act is violative of the United States Constitution because it allows the Nation to impose tribal membership on anyone without the consent of parents or the child. Respondents argue that doing so would be a violation of the individual's fundamental liberty interest of association.[30] However, there is no case law to support the application of that principle to Indian tribes and otherwise legitimate members of those tribes, especially as applied to a rule intended to provide Indian birth parents with protection for their children during the period in which they could put together the paperwork to be granted full membership. Courts have typically enforced an individual's right to disassociate themselves from an Indian tribe,[31] and it could be argued that the right extends to a parent disassociating their child

---

[28]*Allen v. Cherokee Nation Tribal Council, Lela Ummertskee, Registrar and Registration Committee*, Cherokee Nation Judicial Appeals Tribunal 2006 (JAT-04-09, p.5) (holding that the tribe may not violate its constitution to define membership contrary to constitutional provisions. *See also Seminole Nation of Oklahoma*, 223 F. Supp. 2d at 139 ("Neither the Secretary, nor the Indians themselves, may ignore the express provisions of the [tribal] constitution.").

[29]Docket No. 31 at 10.

[30]*Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984).

[31]*See, e.g., Thompson v. County of Franklin*, 180 F.R.D. 216, 225 (N.D.N.Y. 1998) ("Any member of any Indian tribe is at full liberty to terminate his tribal relationship whenever he so

from and Indian tribe by placing the child with a non-Indian family. However, the express language of the ICWA places limitations on the right of the parent to dissassociate their child from the tribe and Respondents' argument fails.

Finally, Respondents argue that the Membership Act is an unlawful attempt to broaden the ICWA. Specifically, the ICWA defines Indian child as one who is either a member or is eligible for membership in a tribe and whose parent is a member of a tribe. Respondents argue that Congress, in considering the ICWA, rejected language that would have extended the ICWA to all children with Native American ancestry, and opted for the two discreet categories currently listed in the ICWA. Respondents argue that the Membership Act is an attempt by the Cherokee Nation to expand the the scope of the ICWA into areas expressly rejected by Congress. The Court finds that the ICWA applies to children who are "members" of a tribe, but does not constrain how membership is to be defined. Therefore, the Court finds that the Membership Act does not improperly expand the scope of the ICWA.

C.   PETITIONER'S FRAUD AND DURESS CLAIMS

Petitioner also seeks to vacate the Relinquishment Hearing based on fraud and duress. Because the Court will grant summary judgment on Petitioner's ICWA procedural claims, it need not reach Petitioner's fraud and duress claims.

IV.  CONCLUSION

Because the Court finds that C.D.K. was an Indian Child at the time of the Relinquishment Hearing, and because the parties agree that the ICWA's procedural requirements were not strictly complied with during the Relinquishment Hearing, it is therefore

---

chooses.").

ORDERED that Petitioner's Motion for Summary Judgment (Docket No. 12) is GRANTED and Respondents' Motion for Partial Summary Judgment (Docket No. 24) is DENIED. Petitioner's consent to termination of her parental rights over C.D.K. is hereby invalidated.

DATED   June 3, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge